# UNITED STATES DISTRICT COURT
for the
Eastern District of Virginia

United States of America )
v. )
) Case No. 14 MJ 105
Cameron Scot Bivins-Breeden )
)
)
)
Defendant(s)

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.
On or about the date(s) of Feb. 12-22, 2014 in the county of King George in the
Eastern District of Virginia , the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. Section 2251(a) | Production of Child Pornography |

This criminal complaint is based on these facts:
SEE ATTACHED AFFIDAVIT

☑ Continued on the attached sheet.

Reviewed by AUSA/SAUSA:
Erik S. Siebert/Samuel E. Fishel

_Lnsy Boc_
Complainant's signature

Special Agent Linsey Busniuk
Printed name and title

Sworn to before me and signed in my presence.

Date: 3/27/14

/s/ M. Hannah Lauck
United States Magistrate Judge
Judge's signature

City and state: Richmond VA

Printed name and title

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

Richmond Division

| | |
|---|---|
| United States of America,<br><br>v.<br><br>CAMERON SCOT BIVINS-BREEDEN | Case No. 3:14____ |

## AFFIDAVIT IN SUPPORT OF PROBABLE CAUSE FOR ARREST

I, Linsey F. Bosnich, being first duly sworn, hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1. I make this affidavit in support of a criminal complaint charging CAMERON SCOT BIVINS-BREEDEN ("BIVINS-BREEDEN"), with production of child pornography, in violation of Title 18, United States Code, Section 2251(a).

2. I am a Special Agent of the Federal Bureau of Investigation ("FBI") and have been since March 2010. I am the case agent on this investigation. I am currently assigned to the investigation of cases involving crimes against children. These investigations have included the use of surveillance techniques, undercover activities, the interviewing of subjects and witnesses, and the planning and execution of search, arrest, and seizure warrants. I have participated in investigations involving sexual assaults, pedophiles, preferential child molesters, persons who collect and distribute child pornography, and the importation and distribution of materials relating to the sexual exploitation of children. I have received training from the FBI in the areas of sexual assaults and child exploitation, and I have reviewed images and videos of child

pornography in a wide variety of media forms, including computer media. I have also discussed and reviewed these materials with other law enforcement officers.

3. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

4. Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that on or about February 12, 2014, to on or about February 22, 2014, BIVINS-BREEDEN used a mobile device to persuade, induce, entice, and coerce minors to engage in sexually explicit conduct, as defined by 18 U.S.C. § 2256, for the purpose of producing visual depictions knowing such visual depiction would be transmitted in or affecting interstate commerce, in King George, Virginia, within the Eastern District of Virginia, for which he can be charged with a criminal offense in violation of Title 18, United States Code, Section §2251(a).

## RELEVANT STATUTORY PROVISIONS

5. **Production of Child Pornography**: 18 U.S.C. § 2251(a) prohibits any person who employs, uses, persuades, induces, entices, or coerces any minor to engage in, or who has a minor assist any other person to engage in, or who transports any minor in or affecting interstate or foreign commerce, or in any Territory or Possession of the United States, with the intent that such minor engage in, any sexually explicit conduct for the purpose of producing any visual depiction of such conduct or for the purpose of transmitting a live visual depiction of such conduct, shall be punished as provided under subsection (e), if such person knows or has reason to know that such visual depiction will be transported or transmitted using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce or mailed, if

that visual depiction was produced or transmitted using materials that have been mailed, shipped, or transported in or affecting interstate or foreign commerce by any means, including by computer, or if such visual depiction has actually be transported or transmitted using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce or mailed.

6.  **Child pornography** means any visual depiction, in any format, of sexually explicit conduct where: (A) the production involves the use of a minor engaging in sexually explicit conduct; (B) such visual depiction is a digital or computer-generated image that is substantially indistinguishable from that of a minor engaged in sexually explicit conduct; or (C) such visual depiction has been created, adapted, or modified to appear that an identifiable minor is engaged in sexual explicit conduct. *See* 18 U.S.C. § 2256(8).

7.  **Visual depictions** include undeveloped film and videotape, and data stored on computer disk or by electronic means, which are capable of conversion into a visual image, and data which are capable of conversion into a visual image that has been transmitted by any means, whether or not stored in a permanent format. *See* 18 U.S.C. § 2256(5).

8.  **Minor** means any person under the age of eighteen years. *See* 18 U.S.C. § 2256(1).

9.  **Sexually explicit conduct** means actual or simulated: (i) sexual intercourse, including genital-genital, oral-genital, or oral-anal, whether between persons of the same or opposite sex; (ii) bestiality; (iii) masturbation; (iv) sadistic or masochistic abuse; or (v) lascivious exhibition of the genitals or pubic area of any person. *See* 18 U.S.C. § 2256(2).

## DEFINITIONS

10.     The **Internet** is a global network of computers and other electronic devices that communicate with each other. Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

11.     **Social Media** are forms of electronic communication, such as websites and blogs through which users create online communities to share information, ideas, personal messages, and other content, such as videos or photographs.
   a. **Facebook** is a social networking service and website launched in February 2004, operated and privately owned by Facebook, Inc. As of July 2011, Facebook has more than 750 million active users. Users may create a personal profile, add other users as friends, and exchange messages, including automatic notifications when they update their profile. Facebook users must register before using the site and are required to provide accurate and true identifying information. Additionally, users may join common-interest user groups, organized by workplace, school or college, or other characteristics. The name of the service stems from the colloquial name for the book given to students at the start of the academic year by university administrations in the United States to help students get to know each other better. Facebook allows any users who declare themselves to be at least 13 years old to become registered users of the website. According to Social Media Today, in April 2010 an estimated 41.6% of the U.S. population had a Facebook account. Facebook.com users can create profiles with photos, lists of personal interests, contact information, and other personal information. Users can communicate with friends and other users through private or public messages and a chat feature. They can also create and join interest groups and "like pages," some of which are maintained by organizations as a means of advertising. One of the most popular applications on Facebook is the Photos application, where users can upload albums and photos. Facebook allows users to upload an unlimited

4

      number of photos, compared with other image hosting services such as Photobucket.com and Flickr.com, which apply limits to the number of photos that a user is allowed to upload. As of May 2009, the limit Facebook.com has placed on subscribers has been increased to 200 photos per album. Privacy settings can be set for individual albums, limiting the groups of users that can see an album. For example, the privacy of an album can be set so that only the user's friends can see the album, while the privacy of another album can be set so that all Facebook users can see it. Another feature of the Photos application is the ability to "tag", or label, users in a photo. For instance, if a photo contains a user's friend, then the user can tag the friend in the photo. This sends a notification to the friend that they have been tagged, and provides them a link to see the photo.

b. **Snapchat** is a photo messaging mobile application that was initially released in 2011 on Android and iOS platforms. SnapChat enables users to take pictures and record videos then, add captions to them and send them to other SnapChat users. SnapChat allows users to take pictures and videos called "snaps." Users can set a time limit, after which the picture or the video is removed from the SnapChat server and the recipient's device. The SnapChat application is free and available worldwide.

12. **Internet Protocol address (or simply "IP address")** is a unique numeric address used by computers on the Internet. An IP address looks like a series of four numbers, each in the range 0-255, separated by periods (*e.g.*, 121.56.97.178). Every computer attached to the Internet must be assigned an IP address so that Internet traffic sent from and directed to that computer may be directed properly from its source to its destination. Most Internet service providers control a range of IP addresses. Some computers have static—that is, long-term—IP addresses, while other computers have dynamic—that is, frequently changed—IP addresses.

5

## **PROBABLE CAUSE**

13.     On or about February 13, 2014, Pasco Police Department (PPD) Detective Sean Granger received complaints from at least two juvenile females residing in Pasco, Franklin County, Washington, regarding a Facebook page in the name of KELSYE DANFORD/jenna.slizzy. Both juveniles are minors, under the age of 18. Both juvenile females reported Facebook user KELSYE DANFORD also used the names JEN SLIZZ and JENNA SLIZZ. The individual also utilized the username jennasliz on SnapChat. During Facebook and Snapchat communications, KELSYE DANFORD/jennasliz would entice the minor females to produce sexually explicit photographs. If the minors refused to produce nude photographs, KELSYE DANFORD/jennasliz would threaten the minor females.

14.     On or about February 13, 2014, PPD Detective Granger queried Facebook and discovered an active Facebook page for KELSYE DANFORD with the url link for the account containing "jenna.slizzy." On approximately February 21, 2014, PPD Detective Granger served Facebook with a search warrant for account KELSYE DANFORD/jenna.slizzy.

15.     On or about March 4, 2014, PPD Detective Granger received the Facebook search warrant return, which included chat sessions from the past six months for the account KELSYE DANFORD/jenna.slizzy. Detective Granger located the chat communications and photographs between KELSYE DANFORD and at least one of the aforementioned juvenile female victims.

16. An initial review of the Facebook search warrant return by PPD Detective Granger revealed approximately nine other individuals appearing to be juvenile females whom KELSYE DANFORD enticed to produce and send child pornography via Facebook.

17. On approximately March 19, 2014, your Affiant received a copy of the Facebook search warrant results from PPD Detective Granger. Upon review, your Affiant identified a female juvenile victim (hereafter JV3) who was enticed by KELSYE DANFORD to produce and send images of child pornography to him via Facebook. JV3 is a minor, under the age of 18.

18. On or about February 12, 2014, JV3 began communicating with KELSYE DANFORD via Facebook. During these communications, JV3 learned KELSYE DANFORD was located in Virginia. During all her communications with KELYSE DANFORD, JV3 resided in Washington State.

19. On approximately February 13, 2014, KELSYE DANFORD, posing as a female, said he actually lived in California and asked JV3 her age. JV3 said she was 12 years old and KELSYE DANFORD stated she was 15 years old. KELSYE DANFORD sent a photograph of what appeared to be a young female in a bra pulling down her underwear exposing part of her vaginal area. KELSYE DANFORD asked JV3 to send him a photograph and JV3 sent a photograph of herself and two friends in bathing suits. KELSEY DANFORD said he was horny and asked JV3 if she masturbated. KELSEY DANFORD sent another photograph of the same young female from the first photograph exposing her breasts and without underwear. KELSYE DANFORD messaged JV3, "Lemme eat u out" and asked if JV3 ever had phone sex, to which JV3 replied no. KELSYE DANFORD asked JV3 to engage in

phone sex and JV3 repeatedly refused stating her father was near. KELSYE DANFORD sent a close up photograph of a finger touching a vagina. JV3 sent a photograph, presumably of herself, portraying a juvenile female in a bra with a bare midsection. KELSYE DANFORD said he wanted more and that he was in love with JV3's body and again asked for another photograph. JV3 then sent a photograph of a female's backside and the female is wearing a bra and underwear. KELSYE DANFORD stated it turns her on and to "keep going." JV3 sent a photograph of what appeared to be JV3 in a bedroom in a black bra with a bare midsection pulling down the top of her jeans. KELSYE DANFORD responded, "take it off" and JV3 sent a photograph of what appears to be the same juvenile female in the black bra, in the same bedroom, with jeans pulled down to her ankles, and pulling down the top of her underwear. KELSYE DANFORD responded, "pussy?" and sent JV3 a photograph of a close up of a vagina telling JV3, "you got me wet." JV3 sent a photograph of fingers spreading apart a vagina and KELSYE DANFORD told JV3 not to stop, "I wanna taste" and to "get it wet." JV3 sent a photograph of a female's backside lying on a bed with her bare buttocks exposed. KELSYE DANFORD told JV3 to, "spread them" and "I"d eat u out all night." KELSYE DANFORD sent a photograph of buttocks and a partially exposed vagina. JV3 sent a photograph of a juvenile female lying in bed with her legs spread exposing her vagina. KELSYE DANFORD stated, "rub it baby" and JV3 sent a photograph of legs spread with a finger inserted into a vagina. In response, KELSYE DANFORD asked to engage in phone sex.

20.     On or about February 14, 2014, KELSYE DANFORD asked JV3 to Skype and then initiated a Facebook telephone call lasting approximately 32 seconds. JV3 could not hear KELSYE DANFORD during the call and KELSYE DANFORD said his microphone

was broken. KELSYE DANFORD wrote, "Come over," "Sit on my face," and asked JV3 for a photograph. JV3 refused to send a photograph stating that she was with her father. After KELSYE DANFORD continued to repeatedly ask for photographs without receiving any from JV3, KELSYE DANFORD stated he was going to "put u on blast too." JV3 asked what KELSYE DANFORD meant and KELSYE DANFORD sent a screenshot of his telephone containing the Facebook chat messages previously described (see paragraph 19) with the photograph JV3 took of her vagina, the photograph JV3 took of her inserting her finger into her vagina with the message from KELSYE DANFORD "rub it." The screen shot further showed the Facebook profile picture of JV3, which appeared to be her face and her first name. KELSYE DANFORD stated she would post the aforementioned screenshot to JV3's whole school. JV3 stated she was sorry and asked KELSYE DANFORD not to post it as it would ruin her life. KELSYE DANFORD said in exchange for phone sex and more photographs of JV3 she will not post the images to her school. JV3 said she would send anything in order for KELSYE DANFORD not to post her photographs. KELSYE DANFORD asked for more photographs promising to delete JV3's photographs after she complied. JV3 sent a photograph of a close up of her vagina and upper thighs to which KELSYE DANFORD told her to spread them and bend over. JV3 stated she already sent a photograph like that to KELSYE DANFORD. KELSYE DANFORD asked for JV3's Snapchat user name and JV3 provided her username. In exchange, JV3 asked KELSYE DANFORD to delete all the photographs she sent on Facebook. KELSYE DANFORD directed JV3 to send videos via Snapchat and JV3 again inquired if KELSYE DANFORD erased her photographs. KELSYE DANFORD repeatedly told JV3 to send more photographs and JV3 said she could only send approximately three more because she needed

9

to sleep. KELSYE DANFORD stated she will not delete the photographs unless they have phone sex. JV3 reminded KELSYE DANFORD her microphone did not work and KELSYE DANFORD responded, "Let me hear u get off." KELSYE DANFORD initiated two separate Facebook calls to JV3 and confirmed he could hear her during the phone calls. JV3 asked how much longer she had to talk with him via Facebook phone and KELSYE DANFORD made another call to JV3. JV3 replied after one minute she was done and KELSYE DANFORD directed JV3 to stick in as many fingers as she can. KELSYE DANFORD initiated several other Facebook calls with JV3 and told her to keep going and repeatedly initiated calls with JV3 telling her to "get it wet."

21. On February 15, 2014, KELSYE DANFORD contacted JV3 on Facebook and JV3 said she did not want to send pictures anymore. JV3 recommended KELSYE DANFORD to look on Google for other pornographic pictures to which KELSYE DANFORD replied no.

22. From on or about February 16, 2014, to February 17, 2014, KELSYE DANFORD repeatedly asked JV3 to communicate. When JV3 refused, KELSYE DANFORD stated he still had the photographs of JV3. JV3 appeared distressed and repeatedly asked KELSYE DANFORD to delete them, get photographs from someone who wants to produce them, and to leave her alone. JV3 asked why KELSYE DANFORD was so mean and reminded him that she was only 12 years old. JV3 repeatedly asked KELSYE DANFORD to delete the photographs she sent and not to post them. JV3 told KELSYE DANFORD he makes her feel scared and every time JV3 received a message from KELSYE DANFORD she felt scared. JV3 reminded KELSYE DANFORD she is not even a teenager yet. KELSYE DANFORD

told her to send one more photograph and threatened to show the nude photographs of JV3 to JV3's friends if she did not comply. JV3 refused as she was at a birthday party. KELSYE DANFORD indicated he was posting the pictures. JV3 appeared distressed and reminded KELSYE DANFORD she was only 12 years old and that she did not want to be in this situation anymore. KELSYE DANFORD replied, "End it." JV3 said to find someone older because she was too young. After repeated requests to produce additional photographs and threats about posting photographs to her friends, JV3 sent a photograph with the message, 'Ok now im done delet all them and leave me alone [sic]" with a picture of a fingers spreading apart a vagina. KELSYE DANFORD told JV3 to send another photograph of her whole body and face and threatened to post photographs to her whole school if she did not comply. JV3 sent a photograph, including her face, of her lifting up her bra exposing her breasts and her naked body to include her vagina with the message, "now leave me alone." This appeared to be the same juvenile female in the original photograph sent to KELSYE DANFORD on February 12, 2014 (reference paragraph 19) with her friends in bathing suits. KELSYE DANFORD informed JV3 she had to do one more thing. JV3 responded she will not send any more photographs and KELSYE DANFORD said to send videos. JV3 said "Snapchat" and KELSYE DANFORD responded "longer video." KELSYE DANFORD directed JV3 to send the video via email. JV3 said she did not have email, "I'm 12 u think I know how to use email?" to which KELSYE DANFORD responded, "We'll I guess ur screwed." JV3 again appeared distressed insisting she cannot send email and will send a video via Snapchat. KELSEYE DANFORD refused any Snapchat video, as they were not long enough. JV3 stated she will make three separate videos and send them to KELSYE DANFORD via Snapchat if afterwards she never contacted her again. KELSYE DANFORD

11

said it had to be more than four videos and told JV3 to "fuck herself" in the videos and not to stop. KELSYE DANFORD provided the Snapchat username as "jennasliz." KELSYE DANFORD told JV3 to keep doing it and JV3 said she will send one more video. KELSYE DANFORD said it must be ten. JV3 said that was too many and she would produce 5 videos. KELSYE DANFORD responded that JV3 only sent one. JV3 said she just sent 5 additional videos, in total she had produced over 20 for KELSYE DANFORD, and she is done now and to forget her.

23. From February 20, 2014, to February 22, 2014, KELSYE DANFORD made several Facebook calls and sent messages to JV3.

24. On or about March 5, 2014, PPD Detective Granger served a search warrant on Verizon Wireless for Internet Protocol (IP) information provided by Facebook pursuant to the search warrant for IP's associated with account KELSYE DANFORD/jenna.slizzy.

25. On approximately March 6, 2014, the Verizon Wireless return received by PPD Detective Granger indicated the only telephone number utilizing the IP addresses accessed by the KELSYE DANFORD/jenna.slizzy Facebook account during the specific dates and times from February 12 to 22, 2014, as noted above in paragraphs 18-23, was telephone number 540-940-****. Verizon Wireless provided the following subscriber information for the aforementioned telephone number: Bruce Breeden, 6165 Botts Lane, King George, Virginia 22485, post pay telephone number with service activation date of December 10, 2013, with the phone being currently active.

26. On or about March 26, 2014, your Affiant executed a search warrant at the residence of Bruce Breeden located at 6165 Botts Lane, King George, Virginia 22485. While executing the search warrant Bruce Breeden was present and agreed to be interviewed by your Affiant. After signing a Miranda Warning Waiver, Bruce Breeden waived his Miranda rights and spoke with your Affiant. In the interview, Bruce Breeden stated the only telephone he uses is a Samsung Galaxy phone. This telephone was the same mobile telephone currently at his residence. Bruce Breeden identified his telephone number as 540-817-****. Bruce Breeden admitted he paid for his son, CAMERON SCOT BIVINS-BREEDEN's (BIVINS-BREEDEN's), telephone and his son uses an iphone. Bruce Breeden could only recall his son's telephone number began with 540 but directed the Agents to look at his saved telephone contacts as it was listed under "Cam." FBI Special Agent Michael French searched the phone contact list which revealed the following telephone number for "Cam" as 540-940-****. Bruce Breeden stated BIVINS-BREEDEN does not have his own residence and often stays at his residence (6165 Botts Lane). Bruce Breeden indicated that the past few months BIVINS-BREEDEN has stayed with him often as his vehicle is broken and parked outside the residence.

27. BIVINS-BREEDEN arrived to the search location at 6165 Botts Lane and agreed to speak with your Affiant. After signing a Miranda Waiver Form and waiving his Miranda rights, BIVINS-BREEDEN informed your Affiant he currently uses an iphone 4 and had also used an iphone 5c. BIVINS-BREEDEN identified his telephone number as 540-940-**** stating that at no time has any other individual used either of his iphone telephones.

13

28. BIVINS-BREEDEN further admitted he uses SnapChat and Facebook on both of his iphones and identified the Facebook account of KELSYE DANFORD/jenna.slizzy as one of the accounts in which he posed as a female in order to entice juvenile females to produce child pornography. BIVINS-BREEDEN also identified the SnapChat account username jennasliz as one he utilized to entice juvenile females to produce sexually explicit images.

29. BIVINS-BREEDEN recalled messaging and calling the Facebook user previously identified as JV3. BIVINS-BREEDEN reviewed chat messages and photographs sent and received by JV3 from on or about February 12, 2014 to February 22, 2014. BIVINS-BREEDEN was aware JV3 is 12 years old and that he enticed her to produce nude photographs for him and that in fact he believed the nude photographs he received of JV3 were in fact JV3. Specifically, BIVINS-BREEDEN acknowledged threatening JV3 to produce more nude photographs for him and that JV3 appeared unhappy in the nude photograph he enticed her to send on or about February 16, 2014. BIVINS-BREEDEN believed the threats he made to JV3 actually scared her.

30. BIVINS-BREEDEN admitted he has resided in King George, Virginia, for the past two months as his vehicle is broken. The only time BIVINS-BREEDEN recalled being in Maryland was on his birthday on or about March 20, 2014, to on or about March 24, 2014 at which time BIVINS-BREEDEN traveled from Maryland back to King George, Virginia. BIVINS-BREEDEN stated whenever he traveled from Maryland to Virginia he always had his cellular telephone. Specifically, BIVINS-BREEDEN stated he was in Virginia during the communications between himself and JV3 from on or about February 12, 2014, through on or about February 22, 2014.

14

31. BIVINS-BREEDEN said it was easier to scare younger girls aged 12 to 14 to produce sexually explicit images than older girls. BIVINS-BREEDEN estimated he had over 100 juvenile victims.

## CONCLUSION

32. Based on the forgoing, your Affiant believes there is probable cause to believe that on or about February 12, 2014 through February 22, 2014, within the Eastern District of Virginia, CAMERON SCOT BIVINS-BREEDEN did knowingly engage in the production of child pornography, in violation of Title 18, United States Code, Section 2251(a).

Respectfully submitted,

_____
Linsey F. Bosnich
Special Agent
Federal Bureau of Investigation

Subscribed and sworn to before me on March 27, 2014.

_____/s/_____
M. Hannah Lauck
United States Magistrate Judge
_____
UNITED STATES MAGISTRATE JUDGE

15